IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| GRALIN D. VINNING, | § | |
|     PLAINTIFF, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. 4:08-CV-059-A |
| | § | |
| MICHAEL J. ASTRUE, | § | |
| COMMISSIONER OF SOCIAL SECURITY, | § | |
|     DEFENDANT. | § | |

### FINDINGS, CONCLUSIONS AND RECOMMENDATION
### OF THE UNITED STATES MAGISTRATE JUDGE
### AND
### NOTICE AND ORDER

This case was referred to the United States Magistrate Judge pursuant to the provisions of Title 28, United States Code, Section 636(b). The Findings, Conclusions and Recommendation of the United States Magistrate Judge are as follows:

### FINDINGS AND CONCLUSIONS

A.  STATEMENT OF THE CASE

Plaintiff Gralin D. Vinning filed this action pursuant to Sections 405(g) and 1383(c)(3) of Title 42 of the United States Code for judicial review of a final decision of the Commissioner of Social Security denying his claims for disability insurance benefits under Title II and supplemental security income or SSI benefits under Title XVI of the Social Security Act. Vinning applied for SSI and disability insurance benefits on July 8, 2004. (Tr. 80, 511). He originally asserted disability commencing in 1998, but later amended his onset date to his fiftieth birthday on August 10, 2004. (Tr. 522).

The Social Security Administration denied Vinning's applications both initially and on reconsideration. He requested a hearing before an administrative law judge (the "ALJ"), and ALJ James Wendland held a hearing on November 17, 2006. (Tr. 519). Vinning was represented by counsel. On January 25, 2007, the ALJ issued an unfavorable decision denying Vinning's application for benefits. (Tr. 24-33). The Appeals Council denied Vinning's request for review, leaving the ALJ's decision to stand as the final decision of the Commissioner. (Tr. 3).

B.   STANDARD OF REVIEW

The Social Security Act defines a disability as a medically determinable physical or mental impairment lasting at least twelve months that prevents the claimant from engaging in substantial gainful activity. 42 U.S.C. § 423(d), 1382c(a)(3)(A); *McQueen v. Apfel*, 168 F.3d 152, 154 (5th Cir. 1999). To determine whether a claimant is disabled, and thus entitled to benefits, a five-step analysis is employed. 20 C.F.R. §§ 404.1520, 416.920. First, the claimant must not be presently working at substantial gainful activity. Substantial gainful activity is defined as work activity involving the use of significant physical or mental abilities for pay or profit. 20 C.F.R. §§ 404.1527, 416.972. Second, the claimant must have an impairment or combination of impairments that is severe. An impairment or combination of impairments is not severe if it has such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985), *cited in Loza v. Apfel*, 219 F.3d 378, 392 (5th Cir. 2000). At the third step, disability will be found if the impairment or combination of impairments meets or equals an impairment listed in the appendix to the regulations. 20 C.F.R. §§ 404.1520(d), 416.920(d). Fourth, if disability cannot be found on

the basis of the claimant's medical status alone, the impairment or impairments must prevent the claimant from returning to his past relevant work. *Id.* §§ 404.1520(e), 416.920(e). And fifth, the impairment must prevent the claimant from doing any work, considering the claimant's residual functional capacity, age, education, and past work experience. *Id.* §§ 404.1520(f), 416.920(f); *Crowley v. Apfel,* 197 F.3d 194, 197-98 (5th Cir.1999).

At steps one through four, the burden of proof rests upon the claimant to show he is disabled. If the claimant satisfies this responsibility, the burden shifts to the Commissioner at step five of the process to show that there is other gainful employment the claimant is capable of performing in spite of his existing impairments. *Crowley*, 197 F.3d at 198. If the Commissioner meets this burden, the claimant must then prove that he cannot in fact perform the work suggested. *Waters v. Barnhart*, 276 F.3d 716, 718 (5th Cir. 2002). A denial of benefits is reviewed only to determine whether the Commissioner applied the correct legal standards and whether the decision is supported by substantial evidence in the record as a whole. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995); *Hollis v. Bowen*, 837 F.2d 1378, 1382 (5th Cir. 1988). Substantial evidence is such relevant evidence as a responsible mind might accept to support a conclusion. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). It is more than a mere scintilla, but less than a preponderance. *Id*. A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision. *Id.* This Court may neither reweigh the evidence in the record nor substitute its judgment for the Commissioner's, but will carefully scrutinize the record to determine if the evidence is present. *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir.2000).

C.   ISSUES

   1.   Whether the ALJ erred in considering Vinning's severe impairments; and

   2.   Whether the ALJ gave adequate weight to medical opinions offered by Vinning's treating physician.

D.   ADMINISTRATIVE RECORD

   1.   Medical and Vocational History

The administrative transcript reflects that Vinning has chronic lung problems, and based on pulmonary function studies, he has been diagnosed with moderate obstructive airway disease that is unimproved with the use of bronchodilators; moderately severe restrictive lung disease; and a moderate diffusion defect possibly due to work-related exposure to toxic fumes. (Tr. 147). Most of Vinning's work experience has consisted of manual labor. (Tr. 100, 538).

Vinning was referred for a consultative internal medicine examination on December 20, 2004, with William Bosworth, M.D. Vinning reported numerous medical problems, including chronic obstructive pulmonary disease (COPD); diabetes; swelling in his hands, feet, and ankles; and back and neck pain. (Tr. 237-38). Vinning estimated that he could walk half a block, stand for twenty minutes, and sit for twenty minutes intermittently. Vinning did minimal housework and had a friend who tended to the housework, meal preparation, and shopping. (Tr. 238).

On examination, Vinning was 75 inches tall and 320 pounds. The physical examination was unremarkable, but Bosworth observed that Vinning had moderate difficulty moving about the room and seemed to be uncomfortable and a little unsteady. (Tr. 238-39). Vinning was unable to heel, toe, or tandem walk, and could not stoop or squat. Vinning was able to get on and off the

examination table without assistance. Fine and dextrous finger movements were normal, and sensation was intact in his upper and lower extremities. (Tr. 339). Vinning demonstrated limited range of motion in his hips and lumbar spine, and straight leg raising was positive at forty-five degrees. (Tr. 249). X-rays showed mild to moderate degenerative disc changes at L4-S1. (Tr. 250). Bosworth's impression was COPD or long-standing asthma; diabetes mellitus under fair control; osteoarthritis or degenerative disc problems of the lumbosacral spine; unspecified breathing problems; and obesity. (Tr. 239-40).

Vinning has a treating relationship with family practitioner Clarence Brooks, M.D. In February 2005, Brooks issued a statement attesting to Vinning's inability to work since 2004 due to diabetes, hypertension, depression, COPD, and asthma. (Tr. 262). On March 9, 2005, Brooks completed a medical assessment of Vinning's ability to perform work-related physical activities. (Tr. 260). Brooks opined that Vinning could lift and carry up to twenty pounds occasionally; stand or walk for less that two hours during an eight-hour workday; and sit for less than six hours in an eight-hour workday. (Tr. 260). Brooks further opined that Vinning was precluded from performing postural tasks and should never climb, balance, stoop, crouch, kneel, or crawl. Vinning's ability to push or pull was also restricted, as was his ability to work around heights, moving machinery, temperature extremes, dust, fumes, humidity, and chemicals. (Tr. 261). Brooks attributed these restrictions to Vinning's musculoskeletal problems and COPD. (Tr. 260). Brooks issued another brief statement in October 2006 to reiterate his opinion that Vinning was unable to work. (Tr. 457).

Vinning sought mental health services from Tarrant County Mental Health and Mental Retardation (MHMR) in April 2005. He reported decreased energy and concentration, but was

generally able to care for himself, cook, and clean his house. (Tr. 411). He was diagnosed with a depressive disorder, but he was denied services because he did not meet the definition of the mental health priority population. (Tr. 406-11). Vinning returned to MHMR in August 2005, and re-evaluation resulted in a diagnosis of major depressive disorder, severe. He was assigned a Global Assessment of Functioning (GAF) score of 40,[1] and was given a prescription for Celexa. (Tr. 401). During his monthly follow-up visits, Vinning reported improvement in that he was crying less, had a better memory, and was sleeping more. (Tr. 383-94). He was discharged from MHMR in October 2006 after the staff tried several times to contact him. (Tr. 460-63). Vinning testified during the hearing that he had asked to have his care transferred to a clinic closer to his home because he had transportation problems, but his request was refused. (Tr. 527-28).

2. ALJ Decision

The ALJ found that Vinning had not engaged in substantial gainful activity since August 10, 2004. (Tr. 26). The ALJ also found that Vinning had multiple severe impairments: diabetes mellitus, COPD, and musculoskeletal pain in his back, legs and hands. None of these impairments or combination of impairments were found to meet or medically equal any listed impairment. (Tr. 26-29). Instead, the ALJ found Vinning retained the residual functional capacity (RFC) for light work[2] that did not require him to stoop, balance, crouch, crawl, kneel, or climb stairs and ramps

---

[1] A GAF score is a standard measurement of an individual's overall functioning level with respect to psychological, social, and occupational functioning, and a score of 31-40 reflects major impairment in several of these areas. AMERICAN PSYCHIATRIC ASSOCIATION, DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 32, 34 (4th ed. 1994)(DSM-IV).

[2] Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. 20 C.F.R. §§ 404.1567(b), 416.967(b).

more than occasionally; climb scaffolds, ladders, and ropes; sit without the opportunity to stand in addition to lunch and normal legal breaks during the workday; stand/walk for more than four hours in an eight-hour workday; push or pull with the feet; handle or finger objects with the left dominant upper extremity more than frequently; work at unguarded heights or near unguarded hazardous mechanical equipment; work with more than a mildly decreased ability to maintain concentration and attention; do more than the lower-end of detailed instructions; or be exposed to excessive dust, fumes or gases more than incidentally or to extreme temperatures and high humidity. (Tr. 29).

The ALJ found that Vinning could not perform any of his past relevant work, but based on the vocational expert's testimony, found that other work existed in the national economy that Vinning could perform. Examples included unskilled occupations as an assembler, an inspector/sorter/grader, and a machine tender. (Tr. 32, 540). The ALJ concluded that Vinning had not been under a disability at any time since August 10, 2004. (Tr. 33).

E.  DISCUSSION

1.  Severe Impairment

Vinning contends that the ALJ erred in failing to include a severe mental impairment at the second step of the sequential evaluation process. In his decision, the ALJ observed that an impairment is considered severe if it significantly limits an individual's ability to perform basic work-related activities, but it is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work. (Tr. 21). Vinning argues that the ALJ did not set out the appropriate standard for severity recognized in the Fifth Circuit.

The Commissioner has issued regulations that define a severe impairment as one which significantly limits a claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c). The Fifth Circuit, however, has found that a literal application of that definition is inconsistent with the statutory language and legislative history of the Social Security Act. Instead, the Fifth Circuit has established the following standard for determining whether a claimant's impairment is severe: An impairment is not severe only if it is a slight abnormality having such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience. *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). The courts are to presume the ALJ used an incorrect standard for measuring severity if the decision fails to refer to the *Stone* opinion by name or cite language of the same effect. *See Loza*, 219 F.3d at 393.

The ALJ did not refer to *Stone* or a similar Fifth Circuit opinion by name. The ALJ recited language similar to the standard that the Fifth Circuit approved in *Stone,* but also quoted the regulatory language for severity that was disapproved by the Fifth Circuit. (Tr. 18). To compound this ambiguity, the ALJ did not include a severe mental impairment in his finding at Step Two, yet subsequently found that Vinning had moderate restriction in his ability to maintain concentration, persistence or pace. The ALJ even incorporated mental restrictions in the RFC assessment. (Tr. 29, 31). A finding of more than mild impairment in Vinning's mental functioning would suggest that a severe mental impairment existed, but it is not the court's job to make this finding, only to review the administrative findings and ensure that the correct legal standards were used. *See Leggett*, 67 F.3d at 564. *Cf.* 20 C.F.R. §§ 404.1520a(d)(1), 416.920a(d)(1). Remand is appropriate to allow the Commissioner to clarify that the *Stone* opinion was followed and to revisit whether a

mental impairment should have been included among Vinning's severe impairments at Step Two.[3]

    2.    Treating Source Opinions

Vinning also asserts that the ALJ erred in rejecting the opinions of treating physician Clarence Brooks, M.D. Generally, opinions, diagnoses, and medical evidence from a treating physician who is familiar with a claimant's impairments, treatments, and responses should be given great weight in determining disability. *See Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995); *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). The ALJ assigns controlling weight to the opinions of a treating physician if well-supported by medically acceptable clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. 20 C.F.R. § 416.927(d)(2); *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The disability regulations also set forth factors to be considered in weighing medical opinions, which include the length of the treatment relationship, frequency of examination, nature and extent of the treating relationship, evidence supporting the opinions, the consistency of those opinions, and medical specialization. *See* 20 C.F.R. §§ 404.927(d), 416.927(d);. *See also* SOCIAL SECURITY RULING 96-2p, 96-5p. The ALJ must consider each of these factors before declining to give any weight to the opinions of the claimant's treating specialist. *Newton v. Apfel*, 209 F.3d 448, 456 (5th Cir. 2000). The determination of disability always remains the province of the ALJ, and the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are

---

[3] The commissioner urges that remand is unnecessary because the ALJ did not end his decision at Step Two, but proceeded to evaluate the claim through all five steps in the sequential evaluation process before denying Vinning's applications. Merely because the denial of benefits occurred later in the process does not excuse the Commissioner's earlier error. *See, e.g., Bragg v. Commissioner of Soc. Sec. Admin.*, 567 F. Supp. 2d 893, 907 (N.D. Tex. 2008)(noting that thorough analysis of evidence under erroneous severity standard does not cure the procedural defect in the ALJ's decision).

brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the evidence. *Leggett*, 67 F.3d at 564; *Greenspan*, 38 F.3d at 237. *See also* 20 C.F.R. § 416.927(e).

Vinning asserts that the ALJ failed to articulate good cause to reject Brooks' opinion that Vinning was limited to less than two hours of standing or walking during a standard workday.[4] The ALJ affirmed that he had considered the opinion evidence in accordance with the applicable regulations and rulings. (Tr. 29). The ALJ also acknowledged Brooks' opinions that Vinning could not lift more than twenty pounds or perform any postural activities, but found these opinions were not credible in view of Vinning's ability to work in 2003 and 2004.[5] (Tr. 31). The ALJ did not mention Brooks' other opinions, particularly those related to Vinning's ability to stand or walk.

The ALJ's treatment of Brooks' March 2005 assessment is confusing and creates internal inconsistencies in the ALJ's decision. Although he explained that Brooks' opinions were not credible, the ALJ limited Vinning to lifting no more than twenty-pounds,[6] just as Brooks had opined, and the ALJ imposed environmental restrictions similar to those suggested in Brooks' assessment. The ALJ's implicit rejection of Brooks' assessment of standing and walking limitations was even more harmful. If the ALJ had considered and assigned more weight to this opinion, he might have found Vinning was limited to sedentary work (or less), and given Vinning's age, education, and lack

---

[4] The ALJ also rejected Brooks' conclusory statements that Vinning is unable to work, but Vinning does not challenge this aspect of the ALJ's decision. (Tr. 31).

[5] Vinning testified that he worked two days a week in 2003 or 2004 performing manual labor jobs he obtained through a temporary agency. (Tr. 29).

[6] The ALJ limited Vinning to light work, which by definition involves lifting no more than twenty pounds. 20 C.F.R. §§ 404.1567(b), 416.967(b).

of transferable skills, the Medical-Vocational Guidelines would have directed a finding of disablity.[7] (Tr. 32). *See* 20 C.F.R. Part 404, Subpart P, App. 2, Table No. 1, Rule 201.14.

The Commissioner asserts that the ALJ's decision is compatible with the 2004 report from the consultative examiner and the findings of the state agency medical consultants. The ALJ summarized the 2004 consultative evaluation, which reflects that Vinning had some mobility and range-of-motion problems and a mild to moderate degenerative disc condition, but the consulting examiner did not complete a functional capacity assessment and the ALJ did not mention the consultative examiner's report as a basis for disregarding Brooks' March 2005 opinions. (Tr. 27, 31). The ALJ also reviewed the findings of the state agency medical consultants who found Vinning capable of performing a full range of light work; however, the ALJ expressly found that Vinning's RFC was more limited than previously determined. (Tr. 31). The ALJ's decision must stand or fall on the reasons put forth by the ALJ, not the post hoc reasoning proposed by the Commissioner. *See Newton v. Apfel,* 209 F.3d 448, 455 (5th Cir. 2000).

Without further insight into how the ALJ distinguished between the credible and incredible aspects of Brooks' assessment, the court's ability to review the Commissioner's decision for the existence of good cause is impeded.

### RECOMMENDATION

It is recommended that the Commissioner's decision be reversed and remanded for further administrative proceedings.

### NOTICE OF RIGHT TO OBJECT TO PROPOSED

---

[7] The Medical-Vocational Guidelines are rules for evaluating a claimant's disability in light of functional and vocational factors. *See generally* 20 C.F.R. Part 404, Subpart P, App. 2, § 200.00(a).

## FINDINGS, CONCLUSIONS AND RECOMMENDATION AND CONSEQUENCES OF FAILURE TO OBJECT

Under 28 U.S.C. § 636(b)(1), each party to this action has the right to serve and file specific written objections in the United States District Court to the United States Magistrate Judge's proposed findings, conclusions and recommendation within ten (10) days after the party has been served with a copy of this document. The court is hereby extending the deadline within which to file specific written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation until March 31, 2009. The United States District Judge need only make a *de novo* determination of those portions of the United States Magistrate Judge's proposed findings, conclusions and recommendation to which specific objection is timely made. *See* 28 U.S.C. § 636(b)(1). Failure to file by the date stated above a specific written objection to a proposed factual finding or legal conclusion will bar a party, except upon grounds of plain error or manifest injustice, from attacking on appeal any such proposed factual findings and legal conclusions accepted by the United States District Judge. *See Douglass v. United Services Auto Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996)(en banc).

## ORDER

Under 28 U.S.C. § 636, it is hereby ORDERED that each party is granted until March 31, 2009 to serve and file written objections to the United States Magistrate Judge's proposed findings, conclusions and recommendation. It is further ORDERED that if objections are filed and the opposing party chooses to file a response, the response shall be filed within seven (7) days of the filing date of the objections.

It is further ORDERED that the above-styled and numbered action, previously referred to

the United States Magistrate Judge for findings, conclusions and recommendation, be and hereby is returned to the docket of the United States District Judge.

SIGNED MARCH 10, 2009.

    /s/   Charles Bleil               
UNITED STATES MAGISTRATE JUDGE