

IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
**FILED**

OCT 29 2009

CLERK, U.S. DISTRICT COURT

By _____
                Deputy

GRALIN D. VINNING, ET AL., §
§
        Plaintiffs, §
§
VS. §  NO. 4:08-CV-059-A
§  (Consolidated with Nos.
MICHAEL J. ASTRUE, §  4:08-CV-155-A, 4:08-CV-324-A
COMMISSIONER OF SOCIAL §  & 4:08-CV-522-A as to Matters
SECURITY, §  Related to EAJA Motions)
§
        Defendant. §

## MEMORANDUM OPINION
### AND
### ORDER

Before the court for decision in each of the consolidated actions shown in the caption is a motion by Elizabeth B. Dunlap ("Dunlap") for attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412, and, in two of the actions, for costs and expenses under the EAJA. The court has concluded that each of the motions should be dismissed as to the fee requests, that the costs requests should be granted, and that the expenses requests should be dismissed.

I.

### The Consolidated Actions

The styles, case numbers, and abbreviated references for the

consolidated actions are:

>Gralin D. Vinning v. Michael J. Astrue, Commissioner of
>Social Security, Case No. 4:08-CV-059-A ("Vinning");
>
>JoAnn Brown v. Michael J. Astrue, Commissioner of
>Social Security, Case No. 4:08-CV-155-A ("Brown");
>
>Mary Ann Keenan-Croom v. Michael J. Astrue,
>Commissioner of Social Security, Case No. 4:08-CV-324-A
>("Keenan-Croom"); and
>
>Eleanor S. Howard v. Michael J. Astrue, Commissioner of
>Social Security, Case No. 4:08-CV-522-A ("Howard").

Each of the actions was initiated by a complaint filed by
Dunlap, the plaintiff's attorney, seeking review of an adverse
administrative decision of Commissioner of Social Security
("Commissioner"). In two of the actions, Keenan-Croom and
Howard, the court ordered upon Commissioner's motions the
reversal of the administrative decisions and the remand to
Commissioner for further proceedings pursuant to the fourth
sentence of 42 U.S.C. § 405(g). In each of the other two, the
court accepted the recommendation of the Magistrate Judge, to
whom the case had been referred, by ordering the reversal of the
administrative decision and the remand to Commissioner for
further proceedings pursuant to the fourth sentence of § 405(g).
In each case, shortly after the entry of the judgment of reversal
and remand, plaintiff, acting through Dunlap, filed a motion for

extension of time in which to file a petition for attorney's fees under 42 U.S.C. § 406(b). The court denied each of the motions.[1]

Thereafter, in each case, Dunlap, in the name of the plaintiff, filed her motion for attorney's fees under the EAJA, and in two of the motions sought costs and expenses under the EAJA. They are the motions at issue in this consolidated action.

Because Dunlap's EAJA motions in <u>Vinning</u>, <u>Brown</u>, and <u>Keenan-Croom</u> raised common issues, on September 17, 2009, the court consolidated those actions for consideration of, and ruling on, Dunlap's EAJA motions. On October 13, 2009, the court consolidated <u>Howard</u> with the other three for the same purposes.

## II.

## Questions Presented

The questions presented by Dunlap's EAJA motions bear a

---

[1]In pertinent part, 42 U.S.C. § 406(b) provides:

Whenever a court renders a judgment favorable to a claimant under this subchapter who was represented before the court by an attorney, the court may determine and <u>allow as part of its judgment</u> a reasonable fee for such representation, not in excess of 25 percent of the total of <u>the past-due benefits to which the claimant is entitled by reason of such judgment</u> . . . .

42 U.S.C. § 406(b)(1)(A) (West Supp. 2009) (emphasis added). In each instance, the denial of Dunlap's § 406(b) motion was compelled by (1) the failure of the final judgment of reversal and remand to allow attorney's fees as part of the judgment and (2) because the plaintiff received no entitlement to past-due benefits by reason of the judgment of reversal and remand. The court noted in each denial its opinion in <u>Kellems v. Astrue</u>, 611 F. Supp. 2d 639, 643-44 (N.D. Tex. 2009), <u>appeal docketed</u>, No. 09-10676 (5th Cir. July 7, 2009), for an elaboration on reasons why the court denied the motion.

3

close resemblance to questions the court decided in Murkeldove v.
Astrue, 635 F. Supp. 2d 564 (N.D. Tex. 2009), appeal docketed,
No. 09-10902 (5th Cir. Sept. 18, 2009).  As was true in
Murkeldove, the main question presented here is whether the
plaintiffs in the consolidated actions can satisfy 28 U.S.C.
§ 2412(d)(1)(A)'s condition precedent to an award of attorney's
fees thereunder that the fees sought be "incurred" by the
prevailing party in the civil action.  A related question is
whether an attorney for a prevailing party, rather than the
prevailing party, is the proper person to receive payment of an
EAJA fee award if the award would otherwise be authorized.  If
the court concludes that either question should be answered in
the negative, the court will be without jurisdiction to grant the
fee requests made by the EAJA motions.

There are subsidiary questions, not the least of which is
whether Dunlap can benefit from an assignment of EAJA benefits
that violates the Anti-Assignment Act, 31 U.S.C. § 3727.

III.

The Grounds of Dunlap's EAJA Motions
and the Nature of Commissioner's Responses Thereto

A.    The Grounds of the Motions

The operative parts of the EAJA motions Dunlap filed in

4

<u>Vinning</u>, <u>Brown</u>, and <u>Keenan-Croom</u> are virtually identical to each other, apparently having been prepared by use of boilerplate language that Dunlap has been using the past few years in her quests for EAJA fees. They proceed on the assumption that only two statutory prerequisites must be satisfied for Dunlap to be entitled to recover an EAJA fee:

> The EAJA sets forth two critical prerequisites to any award of counsel fee. First, the Court must determine that the claimant was a prevailing party. Second, after the claimant has prevailed, the Court must make the further finding that the position of the United States of America was not substantially justified and that no special circumstances make an award of fees unjust. 28 U.S.C. § 2412(d)(1)(A).

EAJA Mot. in <u>Vinning</u> at 2; EAJA Mot. in <u>Brown</u> at 2; EAJA Mot. in <u>Keenan-Croom</u> at 2. Dunlap notes in her motions that the first prerequisite is satisfied by the reversal of Commissioner's administrative decision and the remand to Commissioner, and then says that the second prerequisite has been satisfied either by Commissioner's acknowledgment that there should be a reversal and remand or by the ruling of the court that reversal and remand were required. <u>See, e.g.</u>, Mot. in <u>Vinning</u> at 2-3; Mot. in <u>Keenan-Croom</u> at 2-3.

Each motion was brought under 28 U.S.C. § 2412(d). Section 2412(d)(1)(A) says, <u>inter alia</u>, that the award of fees thereunder

5

will be limited to those "incurred by [the prevailing party] in

any civil action."  However, Dunlap did not address the

"incurred" prerequisite until she filed her EAJA motion in

Howard.  The Howard motion uses the same boilerplate used in the

other three, but adds the following section directed to the

"incurred" feature of § 2412(d)(1)(A):

> IV.  THE PLAINTIFF INCURRED ATTORNEY'S FEES
>
> Ms. Howard has incurred a fee to her counsel for
> legal services provided in the present action.
> Represented by a lay advocate at the administrative
> proceedings below, Ms. Howard engaged counsel to
> represent her in the instant civil action by agreement
> dated August 8, 2008.  [].
>
> Ms. Howard gave consideration for the attorney-
> client agreement by her assignment of any EAJA fee
> awarded to her counsel.  [].  Thereby, the
> Congressional intent underlying the EAJA was fulfilled:
> the indigent Plaintiff was relieved of the financial
> burden that otherwise would have prevented or deterred
> her litigation challenging the unjustified governmental
> action of the Commissioner of Social Security.  *U.S. v.
> Claro*, _____ *F.3d* _____, 2009 WL 2461855, at *14 (5th
> Cir. August 12, 2009), citing *Ardestani v. INS*, 502
> U.S. 129, 138 (1991) (other internal citations
> omitted).
>
> The presence of an attorney-client relationship
> suffices to entitled Ms. Howard, as a prevailing party,
> to receive a fee award under the EAJA.  *Id*., citing *Ed.
> A. Wilson, Inc. v. General Servs. Admin*., 126 F.3d
> 1406, 1409 (Fed. Cir. 1997).

EAJA Mot. in Howard at 3-4.

B.   Commissioner's Responses

Each of the responses Commissioner made to Dunlap's EAJA

motions in Vinning, Brown, and Keenan-Croom was only slightly

more than one typewritten page in length.  After citing Eighth

and Federal Circuit cases that are not on point to the issues

raised in the instant case, Commissioner concluded each with the

following statement:

> It is submitted that these cases hold that an award of
> attorney's fees under EAJA is not necessarily
> contingent upon an obligation to pay counsel and the
> presence of an attorney-client relationship is
> sufficient to entitle the prevailing party to receive a
> fee award.  Commissioner Astrue agrees with the
> rationale of those cases, which are consistent with the
> current policy of the Social Security Administration,
> and, therefore, Commissioner Astrue does not oppose
> either the award of attorney fees or the amount of the
> attorney fees requested in the instant case in this
> Court.

Resp. in Vinning at 2; Resp. in Brown at 2; Resp. in Keenan-Croom

at 2 (emphasis added).  Thus, Commissioner responded each time

that the current policy of Commissioner is that the mere presence

of an attorney-client relationship between the plaintiff and the

plaintiff's attorney in a Social Security case is sufficient to

entitle the attorney to a fee award under the EAJA.

Because of having been told three times by Commissioner of

his "current policy" without any supporting reference, the court

conducted a telephone conference on September 15, 2009, with Dunlap and three lawyers for Commissioner in attendance in an attempt to learn more about the policy.[2]  The government attorneys told the court during the conference that one of the assistant United States attorneys in attendance represented Commissioner in Keenan-Croom, that another represented Commissioner in Vinning, and that the third represented Commissioner in Brown.  Tr. of Sept. 15, 2009, Tel. Conf. in Vinning, Brown, and Keenan-Croom at 3-4.  With that quantity of lawyer power representing Commissioner on the identical EAJA issues in the three cases, they readily should have been able to provide the court an explanation for their statements in Commissioner's responses concerning the "current policy of the Social Security Administration."  Instead, the court received, for the most part,  non-responses and evasions from the government lawyers.  Id. at 5-13, 25-27.

In a further attempt to gain information concerning the "current policy" to which Commissioner referred in his responses, on September 18, 2009, the court ordered Commissioner to provide

---

[2]The court's goal was to determine whether the "policy" to which Commissioner's responses referred would qualify as something in the nature of a regulation that would require a Chevron U.S.A. v. Natural Resources Defense Counsel, Inc., 467 U.S. 837 (1984), analysis.

information about the policy.  Sept. 18, 2009, Order in Consol.

Action at 4.  On September 25, 2009, Commissioner filed a motion

in the consolidated action urging the court to stay the action

until the Fifth Circuit issues an opinion in the appeal now

pending in <u>Murkeldove</u>.  In support of his motion to stay,

Commissioner gave the following explanations:

> 7.  Astrue notes that the plaintiff in a similar
> case has appealed from this Court to the Fifth Circuit
> Court of Appeals.  This case has been designated on
> appeal *Murkledove [sic] v. Astrue*, Case No. 09-10902.
> The central issue in *Murkledove* [sic] is whether EAJA
> fees are appropriate in cases remanded under sentence
> four where the underlying attorney employment agreement
> is a contingency fee contract.  Astrue submits that
> this same issue is pivotal to the Vinning, Brown, and
> Keenan-Croom cases pending before this Court.

> 8.  In the responses to the applications for EAJA
> fees under consideration in the consolidated cases,
> Astrue makes reference to the "current policy of the
> Social Security Administration."  (Vinning Response at
> 2; Brown Response at 2; Keenan-Croom Response at 2.)
> As expressed during the hearing held on September 15,
> 2009, the term "policy" is a term that has multiple
> interpretations.  *Compare* Definition 2a ("a definite
> course of action...") with Definition 2b ("a high-level
> overall plan embracing...general goals and acceptable
> procedures...."), Merriam-Webster Online Dictionary,
> <u>www.merriam-webster.com/dictionary.</u>  Astrue suggests
> that a more precise way to refer to this concept could
> have been to say that the position taken in the
> responses was consistent with the "litigation position"
> of SSA current as of the filing of those responses.

> 9.  Prior to this Court's decision in *Murkledove*
> [sic], the litigation position taken by the Department
> of Justice ("DOJ"), with the advice of its client

> agency the Social Security Administration ("SSA"), was
> that EAJA fees are available in cases with the
> characteristics set forth in the preceding paragraph.
> Following this Court's decision in *Murkledove* [sic],
> additional deliberation regarding this litigation
> position has taken place within DOJ and SSA.  That
> position is currently under review, and high-ranking
> DOJ officials, possibly including the Solicitor
> General, will ultimately determine whether the position
> taken in prior briefs will continue to be the position
> of the government in the appeal of the *Murkledove* [sic]
> case.  The articulation of the position in that brief,
> when it is filed, will be the most comprehensive and
> formal statement of the litigation position regarding
> this particular issue.

Mot. for Stay filed Sept. 25, 2009, in Consol. Actions at 4-5

(footnote omitted).

As an alternative to a stay of the action, Commissioner

sought an extension of time for him to respond to the directives

of the September 18 order so that his response would not be due

until he filed his appellate brief in Murkeldove.  Id. at 6-7.

The court denied the motion to stay as well as the alternative

motion for extension of time.

On September 30, 2009, Commissioner filed his response to

the directive of the September 18 order.  When the gobbledygook

in the response is penetrated, the response is that Commissioner

misrepresented to the court that he has (or has had) a policy of

the kind described in his responses to the EAJA motions in

Vinning, Brown, and Keenan-Croom.  Resp. filed by Comm'r on Sept.

10

30, 2009, in Consol. Action at 3-4.

Finally, on October 15, 2009, Commissioner filed his response to Dunlap's EAJA motion in Howard, using the same responsive language he used in Vinning, Brown, and Keenan-Croom, with two exceptions--he changed the words "current policy" to the words "the current litigation position" and added a citation to United States v. Claro, 579 F.3d 452, 465-68 (5th Cir. 2009). Compare Resp. in Howard at 2-3 to Resp. in Brown at 2.

IV.

Positions Taken by Dunlap in the July 17
and September 15, 2009, Telephone Conference/Hearings

In two telephone conference/hearings related to Dunlap's EAJA motions, Dunlap was given an opportunity to elaborate on her reasons for believing that she should receive EAJA awards.[3]

She started by emphasizing that her fee arrangement is markedly different from the fee arrangement with which the court dealt in Murkeldove. Tr. of July 17, 2009, Tel. Conf. in Keenan-Croom at 4. Her practice is limited to the representation of

---

[3]In the October 14, 2009, order in the consolidated actions, the court invited either party who wished to have an evidentiary hearing on Dunlap's EAJA motions to make that fact known to the court by a document filed by October 26, 2009. Commissioner did not respond. In the response Dunlap filed on October 26, she informed the court that she is not aware of any purpose that would be served by conducting an evidentiary hearing on her pending motions, explaining that "Commissioner does not oppose awards of attorney's fees under the EAJA in any of the four consolidated cases and, thereby, has conceded that all evidentiary proof to support entitlement to an award has been established." Oct. 26, 2009, Resp. at 9.

claimants in district court appeals from administrative
decisions. Id. In response to a question asking what, if any,
fee payment obligation the claimant has to her, Dunlap answered
as to the plaintiff in Keenan-Croom:

> MS. DUNLAP: My attorney fee agreement
> provides that if a federal court rules in favor of the
> plaintiff, I will ask the Court to order Social
> Security to pay an attorney fee under the Equal Access
> to Justice Act. And if the Court orders Social
> Security to make that payment, Ms. Croom has assigned
> to me all the fees, costs, and expenses awarded. So
> that our bargain was I perform federal court
> representation, and she assigns me her rights to
> attorney fees if she is the prevailing party.

Id. at 5.

Dunlap has used in her law practice the business model
described above for approximately seven years. Id. at 6. Once
she decides to take an appeal from the administrative ruling to
federal court, she makes direct contact with the potential
plaintiff, explains her attorney fee arrangement, and sends it to
them for execution, after which she proceeds with the civil
action. Id. at 8. Dunlap arranged for her fee agreement with
the plaintiff in Keenan-Croom to be faxed to the court while the

conference/hearing was in progress. Omitting the date and signature lines, it is worded in its entirety as follows:

### CONTRACT FOR
### ATTORNEY REPRESENTATION BEFORE FEDERAL COURTS

1. I, **MARY ANN KEENAN-CROOM**, hire attorney **ELIZABETH BOWER DUNLAP** to represent me in appealing to the federal courts an unfavorable decision made by a Social Security Administrative Law Judge in my Social Security disability insurance and/or Supplemental Security Income ("SSI") disability claims.

2. I understand that Ms. Dunlap will represent me only in my disability claim(s) and only before the federal courts; she will not represent me in any proceedings before the Social Security Administration ("SSA"), even those held because a federal court rules in my favor.

3. **I will pay no attorney fee at all unless a federal court rules in my favor.**

4. I understand that any attorney fee Ms. Dunlap charges or collects from me must be approved by the presiding Court.

5. If a federal court rules in my favor, I will pay Ms. Dunlap an attorney fee of 25% of all past-due benefits in my disability claims paid to me and my dependents.

6. If a federal court rules in my favor, Ms. Dunlap will ask the Court to order SSA to pay an attorney fee under the Equal Access to Justice Act ("EAJA"). If the Court orders SSA to make payment under the EAJA, I assign to Ms. Dunlap all attorney fees, costs, and expenses awarded to me.

7. If I am found "disabled" at any time after a federal court rules in my favor:

- I will tell Ms. Dunlap right away.

- I will send Ms. Dunlap copies of all papers
saying how much will be paid to me and my
dependents in past-due disability benefits.

- I will pay Ms. Dunlap the remainder of the
agreed attorney fee of 25% of past due
benefits after subtraction of:

   (A)  Any attorney fee awarded under the EAJA;
        and

   (B)  Any attorney fee paid to the attorney(s)
        who represented me before SSA.

8.   I have received a signed copy of this agreement
     for my records.

Id., Ct. Ex. 1; Oct 14, 2009, Order, Ex. at 3-4.[4]

When again asked if the Keenan-Croom plaintiff has any fee-

payment obligation to her, she answered:

       MS. DUNLAP:  She has an obligation to -- she
assigned me the EAJA -- the right to petition for an
EAJA fee as a prevailing party.

              .  .  .  .

       MS. DUNLAP:  Not until and unless she wins
past due benefits, and then there was an obligation to
pay me the remainder of the 25 percent fee after
deductions, EAJA, and any administrative fee.  That
would be out of her own funds.  Otherwise, she pays me
directly no money.

---

[4]Dunlap's contracts for representation of the Vinning, Brown, and Howard plaintiffs were, except
for difference in name of client, identical to the Dunlap/Keenan-Croom contract quoted in the text.
Dunlap's Sept. 30, 2009, Resp. in Consol. Action, Exs. at 1, 3; EAJA Mot. in Howard, Ex. A.

<u>Id.</u> at 14. If Dunlap recovers fees under the EAJA, the plaintiff will not receive any part of that fee, but would receive a reimbursement for whatever recovery is made under the EAJA for the district court filing fee paid by the plaintiff. <u>Id.</u> at 15.

Dunlap always has filed a motion for attorney's fees under the EAJA when the court has ordered a sentence four remand in a case she has handled on appeal. <u>Id.</u> at 16. Dunlap estimates that she has sought EAJA fees after a sentence four remand approximately thirty-five to thirty-eight times per year. <u>Id.</u> at 17-18. She briefs approximately fifty cases per year,[5] and her win rate ranges from seventy-five to eighty percent. <u>Id.</u> at 17.

Her expectation is that whenever she is successful in

---

[5]The large volume of Social Security litigation handled by Dunlap is disclosed to an extent by her motions for extensions of time for the filing of her briefs in the consolidated actions. In <u>Vinning</u> she sought and gained extensions of time for the filing of her opening brief and then for the filing of her reply brief, the first motion alleging that she "currently has 15 briefs due in various divisions of the Texas and Mississippi districts of the United States District Court during the period preceding September 9, 2008 . . . ." Docket Entry No. 16 in No. 4:08-CV-059-A. Similar allegations were made in motions in each of the other consolidated actions--in <u>Brown</u> Dunlap alleged in her motion for extension of time for the filing of her opening brief that she had "15 briefs due in various divisions of the Texas districts of the United States District Court during the period preceding December 18, 2008," Docket Entry No. 11 in No. 4:08-CV-155-A, and in her motion for extension of time to file her reply brief she alleged that she "has 12 briefs due in various divisions of the Texas and Mississippi districts of the United States District Court during the period preceding April 13, 2009," Docket Entry No. 17 in No. 4:08-CV-155-A; her motion in <u>Keenan-Croom</u> for an extension of time for the filing of her opening brief stated that she "currently has 15 briefs due in various divisions of the Texas and Mississippi districts of the United States District Court during the period preceding January 29, 2009," Docket Entry No. 11 in No. 4:08-CV-324-A; and, in <u>Howard</u> Dunlap's motion for an extension of time for the filing of her opening brief alleged that she "currently has 21 briefs due in various divisions of the Texas and Mississippi districts of the United States District Court as well as the United States Court of Appeals for the Fifth Circuit during the period preceding April 8, 2009," Docket Entry No. 13 in No. 4:08-CV-522-A.

receiving an EAJA fee it would be payable to her by the government because her client has executed an assignment in the fee agreement. Id. at 19. All of the EAJA checks she has received have been made out to her as the sole payee, even if the order of the court directing payment said that Commissioner was to make the payment to the plaintiff. Id. at 26-27. She further explains, "the EAJA fee is for [her] client to remunerate [her] for the work that [she] performed in federal court." Id. at 20.

Dunlap interprets her fee agreement to provide "that [the client] will pay the fee on the contingent precedent that a federal court rules in [the client's] favor, not that [the client] receives benefits." Id. at 23. She says that she "provide[s] a service to claimants that otherwise would not be able to afford litigation before the federal courts to challenge unfounded government action, and [she] think[s] that is the purpose of the EAJA, in effect." Id. at 24. She opines that the court, in questioning her EAJA motions, "maybe [] trying to put [her] out of business." Id. at 25.

Dunlap does not, after she receives an EAJA fee award, follow up with her client to find out what fee is collected by the client's representative at the post-remand administrative level because it would not make any difference to her whether the

fee collected at that level was twenty-five percent of the benefits. Tr. of Sept. 15, 2009, Tel. Conf. in <u>Vinning</u>, <u>Brown</u>, and <u>Keenan-Croom</u> at 21-23. Her belief is that it would be proper for the overall fee payment to the claimant's representatives to be in excess of twenty-five percent. <u>Id.</u> She went on to explain that:

> THE COURT: . . . The person representing the claimant before the commissioner collects a 25 percent fee and then the person in your position collects a fee that says equal to 5 percent, which makes it a total of a 30 percent fee. Are you telling me you think that that is legally proper?
>
> MS. DUNLAP: As long as the fee that was paid to me is paid under the Equal Access to Justice Act by court order, I believe it is proper.

<u>Id.</u> at 23-24.

## V.

## Collection of Historical Information

On September 18, 2009, the court ordered Dunlap to provide historical information pertaining to <u>Vinning</u>, <u>Brown</u>, and <u>Keenan-Croom</u> and fourteen other actions filed by Dunlap on the undersigned's docket during and after the year 2000 in which the court made an EAJA fee awards to Dunlap. Dunlap's September 30, 2009, response provided some of the requested information, but failed to provide a significant part of it. After having studied

the court's case files on all of the cases mentioned in the September 18 order, the court prepared a memorandum of historical information concerning Dunlap's handling of the seventeen cases; and, on October 14, 2009, the court provided Dunlap and counsel for Commissioner a copy of the memorandum as an exhibit to an order soliciting comments from the parties and directing Dunlap to furnish further historical information.

The historical information discussed in the exhibit attached to the October 14 order discloses the abundance of attorney and non-attorney representatives in this area who are available to represent Social Security claimants, more often than not on a contingent fee basis, and, the variety of arrangements attorneys are willing to enter into with Social Security claimants that do not contemplate any payment to the attorney unless the attorney succeeds in collecting Social Security benefits for the claimant. Of particular interest are earlier versions of fee arrangements Dunlap entered into with her Social Security claimant-clients. In December 2005 Dunlap entered into a fee contract with a Social Security claimant that contained the following provisions relative to compensation to be received by Dunlap:

2. **I will pay no fee at all unless I win my case.**

3. I understand that all attorney fees in Social

Security cases are subject to the approval of the
U.S. District Court and/or higher court and any
fee my attorney charges or collects from me for
her services must be so approved.

4.  We agree that if the U.S. District Court or any
higher Court renders a favorable outcome in my
case by granting me a new hearing before a Social
Security Judge or by awarding me disability
benefits, my attorney will petition the Court to
award attorney fees and court costs under the
Equal Access to Justice Act (EAJA).  If the Court
orders the payment of such fee, it will be paid
directly by the Social Security Administration
(SSA) and not from my past due benefits.  The
attorney fees and all reimbursed costs awarded by
the Court under the EAJA shall belong to my
attorney.

5.  We further agree that if the U.S. District Court
or any higher Court renders a favorable outcome in
my case as stated above **but attorney fees are not
payable under the EAJA and I am eventually granted
past due benefits by SSA**, my attorney may petition
the Court to award an attorney fee of $175 per
hour for her legal services.  I agree to pay Ms.
Dunlap the amount of such fee awarded by the Court
from the past due disability benefits paid to me
by SSA.

Oct. 14, 2009, Order, Ex. at 32.  A pre-2005 version of Dunlap's

fee agreement contains the following provisions relative to her

compensation:

2.  **I will pay no fee at all unless I win my case.**

3.  I understand that all attorney fees in Social
Security cases are subject to the approval of the
Social Security Administration (SSA) and any fee
my attorney charges or collects from me for their
services must be approved by SSA.

4.   We agree[] that if SSA favorably decides my claim,
     I will pay my attorney a fee equal to 25% of all
     past-due benefits in my Social Security and/or SSI
     disability claims.

5.   We understand that Social Security "past-due"
     benefits are the total amount of money to which I,
     and any family members who qualify on my account,
     become entitled through the month before the month
     SSA makes a favorable administrative decision on
     my Social Security claim; and that Supplemental
     Security Income (SSI) "past-due benefits" are the
     total amount of money for which I become eligible
     through the month SSA makes a favorable
     administrative decision on my SSI claim.

6.   In addition to the attorney fee, if Ms. Dunlap has
     to pay my doctors for reports about my
     disabilities, I will repay her for these costs
     after I win my case.   I will not repay her for
     incidental costs, such as parking, travel, postage
     or copies.

7.   If my case is appeared to Federal Court, and if
     the Court orders the Social Security
     Administration to pay attorney fees under the
     Equal Access to Justice Act, such fees belong to
     my attorney to the extent permitted by law.

Id. at 45-46.

     The further historical information furnished by Dunlap in

her October 26 response to the directive of the October 14 order

focuses on other payment techniques Dunlap has employed in her

representation of Social Security claimants.   For example, she

sent a letter on February 5, 2004, to the attorney who took over

representation of the claimant after the judge in the district

20

court appeal handled by Dunlap reversed and remanded the claim to

Commissioner pursuant to the fourth sentence of § 405(g), in

which she explained:

> In referrals such as this, I normally ask for a
> referral fee equal to 25% of any fee that you collect
> upon the successful resolution of the case. If this
> arrangement is not acceptable to you, please call me
> right away so that we can further discuss this issue.
> If I do not hear from you, I will assume that a 25%
> referral fee is acceptable.

Oct. 26, 2009, Resp., Attachs. at 39.

In contrast, starting as early as December 2002 Dunlap put

emphasis from time to time on her reliance on "any EAJA attorney

fee," often saying in letters to attorneys or non-attorney

representatives who apparently had represented the claimants at

the administrative level before Dunlap took over representation

in the district court appeal that:

> This will confirm that I am representing the above-
> named Social Security disability claimant in an appeal
> before the federal court upon your referral. Enclosed
> please find a copy of my fee agreement signed by []. 
> You will note that the fee agreement provides for
> representation only before the federal court.

> At the successful resolution of the federal appeal(s),
> it is my understanding that you will resume
> representation of this claimant. Therefore, I will
> keep you apprised of the status of the civil action. I
> have notified our client of the arrangement.

> I will be entitled to any EAJA attorney fee that may be
> awarded by the Court for legal services rendered in the

federal court proceedings.  I will not be entitled to
an attorney fee for any services rendered in the
administrative proceedings.

Id. at 22 (letter dated March 8, 2006); 25 (letter dated June 11,

2004); 36 (letter dated December 20, 2002).

In further contrast, in March 2003 Dunlap entered into an

agreement with the group that referred the Social Security

claimant to her for the handling of a district court appeal that

provided in reference to Dunlap's fee payment that:

> 4.   If Ms. Dunlap accepts my case and I retain her as
> my attorney, I understand that <u>I will not be obligated
> for any attorney's fees or costs for the appeal</u> because
> Ms. Dunlap will seek her attorney fees under the Equal
> Access to Justice Act and Allsup will pay certain
> secretarial costs not to exceed $100 along with the
> filing and service fees if required.  I agree that if
> the EAJA fees are awarded by the court to Ms. Dunlap
> they will be paid by SSA to her and I waive any and all
> interest in them.

Id. at 29.

VI.

<u>Analysis</u>

Dunlap's motions are made under the part of the EAJA that

provides:

> Except as otherwise specifically provided by
> statute, a court shall award <u>to a prevailing party</u>
> other than the United States fees and other expenses,
> in addition to any costs awarded pursuant to subsection
> (a), <u>incurred by that party in any civil action</u> (other
> than cases sounding in tort), including proceedings for

22

judicial review of agency action, brought by or against
the United States in any court having jurisdiction of
that action, unless the court finds that the position
of the United States was substantially justified or
that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (emphases added).

A.   The Fees Claimed Through the EAJA Motions

As did the attorneys representing the Social Security

claimant in Murkeldove, 635 F. Supp. 2d at 568, Dunlap apparently

maintains that she has an automatic entitlement to an award of

EAJA attorney's fees following a sentence four remand by virtue

of (1) having been successful in causing the case to be remanded,

(2) having represented the claimant in the district court action

in which the remand was ordered, and (3) the inability of

Commissioner to prove substantial justification.  Commissioner's

responses indicate that Commissioner agrees with Dunlap's theory

of entitlement to EAJA fees.  As it did in Murkeldove, the court

has concluded that it cannot treat the "incurred by that party in

any civil action" language in § 2412(d)(1)(A) so lightly.

The court reiterates the Murkeldove language that is equally

applicable here:

"The EAJA renders the United States liable for
attorney's fees for which it would not otherwise be
liable, and thus amounts to a partial waiver of
sovereign immunity." Ardestani v. I.N.S., 502 U.S.
129, 137 (1991). "A waiver of the Federal Government's

23

sovereign immunity must be unequivocally expressed in statutory text . . . and will not be implied." Lane v. Pena, 518 U.S. 187, 192 (1996). "Any such waiver must be strictly construed in favor of the United States." Ardestani, 502 U.S. at 137; see also Texas Food Indus. Ass'n v. USDA, 81 F.3d 578, 580 (5th Cir. 1996) ("Because EAJA is a partial waiver of sovereign immunity, it must be strictly construed in the government's favor."). "[T]he terms of its waiver, as set forth expressly and specifically by Congress, define the parameters of a federal court's subject matter jurisdiction . . . ." Ware v. United States, 626 F.2d 1278, 1286 (5th Cir. 1980).

Nothing could be clearer from the wording of 28 U.S.C. § 2412(d)(1)(A) than that the statute authorizes an award only to "a prevailing party" for fees "incurred by that party" in a civil action. Also apparent is the inference that the statute is not for the benefit of the lawyer for the prevailing party and does not contemplate an award of lawyer's fees to a lawyer whose client has not incurred those fees. Put another way, the wording of the statute makes clear that its purpose is to make provision for compensation to a party to a civil action of a kind contemplated by the statute for fees incurred by that party in successfully advancing his position in the action.

"The plain meaning of legislation should be conclusive, except in the rare cases in which the literal application of a statute will produce a result demonstrably at odds with the intentions of its drafters." United States v. Ron Pair Enters., Inc., 489 U.S. 235, 242 (1989) (internal quotation marks & brackets omitted) (citing Griffin v. Oceanic Contractors, Inc., 458 U.S. 564, 571 (1982)). "If the statute speaks clearly to the precise question at issue, [the court] must give effect to the unambiguously expressed intent of Congress." Reeves v. Astrue, 526 F.3d 732, 734 (11th Cir. 2008) (internal

quotation marks & original alterations omitted)
(quoting <u>Barnhart v. Walton</u>, 535 U.S. 212, 217 (2002)).

<u>Id.</u> at 571-72.[6]

There is nothing in the legislative history of the EAJA that suggests that the plain meaning of § 2412(d)(1)(A), including the "incurred by that party" language, would produce a result demonstratively at odds with the intention of the drafter. <u>See</u> <u>Murkeldove</u>, 635 F. Supp. 2d at 573. Thus, an EAJA claimant "bears the burden of proving that he has incurred legal fees under the EAJA." <u>U.S. SEC v. Zahareas</u>, 374 F.3d 624, 630 (8th Cir. 2004).

Here, the person seeking attorney's fees is not even the claimant. Instead, the EAJA movant in each of the consolidated cases is the claimant's attorney. In support of a contention she now makes that the statutory "incurred" language has been

---

[6]The court refers the reader to the <u>Murkeldove</u> opinion for a discussion of potentially pertinent case authorities that is more complete than that contained in this memorandum opinion. <u>Murkeldove</u>, 635 F. Supp. 2d 576-83. There has been a recent development related to the questions discussed in the <u>Murkeldove</u> opinion. On September 30, 2009, the Supreme Court granted the petition for writ of certiorari Commissioner filed in <u>Ratliff v. Astrue</u>, 540 F.3d 800 (8th Cir. 2008), which the court mentioned at pages 581-82 of the <u>Murkeldove</u> opinion, on the following question:

> Whether an "award of fees and other expenses" under the Equal Access to Justice Act, 28 U.S.C. § 2412(d), is payable to the "prevailing party" rather than to the prevailing party's attorney, and therefore is subject to an offset for a pre-existing debt owed by the prevailing party to the United States.

<u>Astrue v. Ratliff</u>, --- S. Ct. ---. 2009 WL 1146426, 540 F.3d 800 (8th Cir. 2009), <u>cert. granted</u>, 77 U.S.L.W. 3619 (U.S. Sept. 30, 2009) (No. 08-1322); <u>Astrue v. Ratliff</u>, 2009 WL 1155415, 540 F.3d 800 (8th Cir. 2009), <u>petition for cert. filed</u>, 77 U.S.L.W. 3619 (Apr. 28, 2009) (No. 08-1322).

satisfied, Dunlap can do no more than to note that the claimants
have assigned to her the right to petition for an EAJA fee as a
prevailing party.  Tr. of July 17, 2009, Tel. Conf. in <u>Keenan-
Croom</u> at 14; EAJA Mot. in <u>Howard</u> at 3-4.  Dunlap's contention is
not sound.  The assignment language in each of the contracts she
has with the plaintiffs in the consolidated actions reads as
follows:

> 6.  If a federal court rules in my favor, Ms. Dunlap
> will ask the Court to order SSA to pay an attorney
> fee under the Equal Access to Justice Act
> ("EAJA").  If the Court orders SSA to make payment
> under the EAJA, I assign to Ms. Dunlap all
> attorney fees, costs, and expenses awarded to me.

<u>Supra</u> at 13.  The Social Security attorneys in <u>Murkeldove</u> relied
on similar EAJA assignment language.  <u>Murkeldove</u>, 635 F. Supp. 2d
at 574.  For the reasons stated in <u>Murkeldove</u>, such an assignment
cannot serve to give the claimant's lawyer an entitlement to an
EAJA fee derivatively through the claimant.  <u>Id.</u> at 574-75.  Not
only does the claimant have nothing to assign, such an assignment
would be in direct violation of the Anti-Assignment Act, 31
U.S.C. § 3727 (formerly 31 U.S.C. § 203).[7]  <u>See Kearney v. United</u>

---

[7]There appears to be another reason why the EAJA assignment provision in Dunlap's fee
contracts with the plaintiffs in the consolidated actions would not benefit Dunlap in cases such as these.
A reasonable argument can be made that the condition precedent to the operation of the EAJA
contractual provision has not occurred in any of the cases.  According to the contracts, the EAJA
provision applies only "[i]f a federal court rules in [the client's] favor." <u>Supra</u> at 13.  That same condition
(continued...)

States, 285 F.2d 797, 799-800 (1961).

Dunlap's fee contracts with the plaintiffs in the consolidated actions do have legitimate fee payment provisions in paragraph 5 of the contracts, which says that:

> 5. If a federal court rules in my favor, I will pay Ms. Dunlap an attorney fee of 25% of all past-due benefits in my disability claims paid to me and my dependents.

Supra at 13. This fee provision is consistent with the statutory authorization found at 42 U.S.C. § 406(b)(1)(A). If Dunlap is successful in persuading a district court on an appeal from an adverse administrative ruling to award past-due benefits to Dunlap's plaintiff-client, she would, with court approval, be entitled to recover up to 25% of those past-due benefits. Indeed, this is precisely the kind of fee arrangement Congress contemplated in an appeal to a district court from an adverse Social Security decision. Congress said in § 406(b)(1)(A) that

---

[7](...continued)
precedent language is used in the contingent fee provision of the contracts, which says "[i]f a federal court rules in my favor, I will pay Ms. Dunlap an attorney fee of 25% of all past-due benefits in my disability claims paid to me and my dependents." Id. The court recognizes that when the plaintiffs obtained a reversal and remand on their appeals to the district court, they qualified as prevailing parties as the term "prevailing party" is used in § 2412(d)(1)(A), Murkeldove, 635 F. Supp.2d at 573, but that does not mean that a federal court has ruled in their favor in the sense contemplated by Dunlap's fee contract. When the contract is read in its entirety, the court is inclined to think that it contemplates that a federal court ruling in the claimant's favor exists only if the federal court has awarded Social Security benefits to the claimant. However, the court need not devote further attention to that issue because of the other reasons why Dunlap's EAJA motions for fees cannot be granted.

"[i]n case of any such judgment, no other fee may be payable or certified for payment for such representation except as provided in this paragraph." If Dunlap were to cause a Social Security claimant to receive an award in a district court appeal and, in turn, were to receive a percentage of the past-due benefits as her fee, a claim on behalf of the plaintiff under the EAJA would be perfectly proper, and probably would be honored by the court. But, it would be a claim by the plaintiff for reimbursement of the contingent fee paid to Dunlap, and would not be a claim for payment of a fee to Dunlap.

To whatever extent Dunlap might contend that payment of an EAJA fee is justified by the possibility that she could later recover in these actions fees under 42 U.S.C. § 406(b)(1), such a contention would be equally without merit. See Kellems v. Astrue, 611 F. Supp. 2d 639, 643-44 (N.D. Tex. 2009). Moreover, even if Dunlap were correct that, after collecting an EAJA fee, she could come back before the court and recover out of the claimant's Social Security benefits a fee pursuant to the contingent fee feature of her contract, the absurdity noted by the court in Murkeldove would follow--Dunlap would take assets belonging to the claimant and then return to the claimant no more than the amount she took. Murkeldove, 635 F. Supp.2d at 583-84.

Dunlap and Commissioner each has cited the Fifth Circuit's recent _Claro_ opinion in support of the positions taken on Dunlap's motions. EAJA Mot. in _Howard_ at 3-4; Resp. in _Howard_ at 2-3. Their reliance on _Claro_ is misplaced. The _Claro_ holdings appear to be that:

(1) "although contingent-fee agreements are allowed under the Hyde Amendment and provide a cap above which plaintiffs cannot recover, the district court nonetheless retains discretion to reduce that amount to one that is reasonable," _Claro_, 597 F.3d at 462; and

(2) "_Claro_ is not entitled to fees for his wife's work because, unlike, for example, the work done by the law firms in defending against the criminal charges, the work done by Mrs. Claro did not represent 'incurred' costs under § 2412(d); and, there are no exceptional circumstances that would allow an award of such fees, notwithstanding Claro's having no legal obligation to pay for his wife's work," _id._ at 464.

In the course of arriving at those holdings, the Fifth Circuit had general discussions on the subject of the "incurred" requirement in the EAJA, which is incorporated into the Hyde Amendment. _Id._ at 456. The Fifth Circuit recognized the general rule that fees are "incurred" when the litigant has a legal

obligation to pay them.  <u>Id.</u> at 464.  The legal fees with which
the Fifth Circuit was concerned in <u>Claro</u> were contingent fees
that were actually incurred by the litigants.  <u>Id.</u> at 455.  The
Fifth Circuit noted that courts have recognized "exceptional
situations for which an award of attorney's fees is <u>not</u>
contingent upon an obligation to pay counsel," <u>id.</u> at 465, but
went on to note that generally those exceptional situations exist
when "the prevailing party is represented <u>pro bono</u> or by a legal-
services organization," <u>id.</u>  The Fifth Circuit gave as another
example of a court decision that attorney's fees could be awarded
under the EAJA even though the litigant had not actually paid the
fees a case in which the litigant's insurance company paid legal
fees on the litigant's behalf for his representation in the
action.  <u>Id.</u> at 465-66.  Based on its analysis of the exceptional
cases discussed in the opinion, the Fifth Circuit provided the
following summary:

> The above demonstrates that attorney's fees have
> been granted under the EAJA in the following broad
> circumstances: (1) under the general rule, in which the
> litigant actually incurs the legal obligation to pay
> the fees; (2) in situations in which an indigent
> litigant is represented *pro bono;* or (3) in a limited

amount of residual situations in which policy dictates
allowing fees to further the above-described goals of
the EAJA.

Id. at 466.

Even if the assumption were made that the Fifth Circuit

would give effect to the exceptions noted in the quoted language,

it would not benefit Dunlap.  There is nothing in the record of

this action that would lead to the conclusion that representation

by Dunlap of Social Security claimants in district court actions

falls within "the limited amount of residual situations in which

policy dictates allowing fees to further the . . . goals of the

EAJA."  Id. at 466.  To the contrary, the record shows that there

is an abundance of available representation for Social Security

claimants on a contingent fee basis and that reliance on the EAJA

is not required for those claimants to obtain needed

representation in the pursuit of Social Security claims.  The

fifty-six-page exhibit attached to the October 14, 2009, order in

the consolidated action discloses that Social Security claimants

have multiple sources for legal representation in this area, and

that those who have been represented by Dunlap during and since

the year 2000 apparently have not experienced difficulty in

obtaining appropriate legal representation, both from lawyer

representatives and non-lawyer representatives, and under a large

31

variety of representation contracts or fee agreements.

The various representation contracts and fee agreements mentioned in section V above make quite clear that there are available arrangements, with an abundance of legal representatives, through which Social Security claimants in this area can obtain quality representation. Resorting to the EAJA as a fee payment device is not necessary for that representation to be found. As noted under section V, Dunlap herself has been willing to provide representation to Social Security claimants on a contingent fee basis. The fact that Dunlap has now decided to conduct her Social Security representation on a business model that contemplates that her main, if not sole, source of compensation will be through EAJA awards does not provide justification for disregarding the "incurred" feature of § 2412(d)(1)(A).

Moreover, as the Sixth Circuit explained in Bryant v. Commissioner of Social Security, 578 F.3d 443 (6th Cir. 2009), if an application of the EAJA that comports with statutory language impairs the ability of litigants to attract competent counsel to represent them in contesting governmental action, the remedy lies in the hands of Congress, not the judiciary. Id. at 449. The court is satisfied that a strict application of the "incurred by

that party" language of § 2412(d)(1)(A) will not prevent Social Security litigants from having competent counsel. Even if it did, the solution is up to Congress, not the judiciary.

As the court noted in Murkeldove, the practice has developed among Social Security attorneys of viewing the EAJA as a supplement to the fees to which they are entitled under a contingent fee contract. Murkeldove, 635 F. Supp.2d at 569 n.4. With the assent of Commissioner, the attorneys have learned to look upon the EAJA as a cash cow for their benefit, rather than as a method by which a Social Security claimant who has incurred fees can seek reimbursement. There is nothing in the text or legislative history of the EAJA indicating that the statute was intended to serve that purpose.

B.   The Costs and Expenses Claimed Through the EAJA Motions

Section 2412(d)(1)(A) contemplates that the prevailing plaintiff shall be entitled to recover expenses and costs incurred by the plaintiff pursuant to subsection (a) of § 2412. No costs or expenses are claimed in the Vinning or Howard EAJA motions. In the Keenan-Croom EAJA motion, the allegation is made that filing fees of $350.00, copy expenses of $43.20, and postage expenses of $71.46 are compensable under the EAJA. Keenan-Croom EAJA Mot. at 5. The allegation is made in the EAJA motion in

33

Brown that filing fees of $350.00, copy expenses of $62.60, and postage expenses of $74.94 are compensable. Brown EAJA Mot. at 5.

The court has no reason to question that the Keenan-Croom and Brown plaintiffs in fact incurred the costs they claim. Tr. of July 17, 2009, Tel. Conf. in Keenan-Croom at 15-16. Therefore, the court is awarding directly to the Keenan-Croom plaintiff the amount of $350.00 as the costs incurred by her and to the Brown plaintiff the amount of $350.00 as the costs incurred by her. The court is dismissing the requests for payment of the copy and postage expenses as there is no evidence that those expenses were incurred by the plaintiff.

VII.

Conclusion

The court concludes that it does not have subject matter jurisdiction to grant any of Dunlap's motions for EAJA fees. The clear wording of 28 U.S.C. § 2412(d)(1)(A) mandates that fees are to be awarded to a party only if they have been "incurred by that party." None of the plaintiffs in the consolidated actions has paid, or become obligated to pay, any fees to Dunlap. Therefore, the court has no authority to award fees to the plaintiffs or Dunlap.

The court recognizes that it is taking the unusual action of making a decision that is against the wishes of both Dunlap and Commissioner in each of the consolidated cases. However, the court is obligated to determine on its own if it has subject matter jurisdiction to grant the relief requested, and to decline to grant it if the court concludes that it lacks jurisdiction to do so. See Steel Co. v. Citizens for Better Env't, 523 U.S. 83, 94-95 (1998); B., Inc. v. Miller Brewing Co., 663 F.2d 545, 549 (5th Cir. Unit A 1981).

In a large number of cases over the years, Commissioner has, in effect, expressed a waiver of his sovereign immunity to the end of inducing the court to order payments under the EAJA even though the statute does not authorize the court to make the awards.[8] But attempted waivers by Commissioner are not a sufficient reason for the court to disregard the statutory language. "It has long been settled that officers of the United States possess no power through their actions to waive an immunity of the United States or to confer jurisdiction on a court in the absence of some express provision by Congress."

---

[8] As the court noted in Murkeldove v. Astrue, 635 F. Supp. 2d 564 (N.D. Tex. 2009), the appearance is that the court unwittingly has exceeded its jurisdictional limits by awarding EAJA fees in Social Security actions similar to the consolidated actions at least sixty-eight times during and after the year 2000. Id. at 569 n.4. The court's records indicate that Dunlap has been the recipient of at least fourteen of those unauthorized EAJA awards.

<u>United States v. N.Y. Rayon Co.</u>, 329 U.S. 654, 660 (1947).  The waiver of the government's sovereign immunity "must be unequivocally expressed in statutory text."  <u>Lane v. Pena</u>, 518 U.S. 187, 192 (1996).  The court does not have the power to carve out an implied exception to the plain words of § 2412(d)(1)(A).  <u>Id.</u>

If Commissioner wishes, outside the court system, gratuitously to make payments of fees to attorneys in Dunlap's situation, that conduct will be a matter between Commissioner, the Social Security claimants' attorneys, and whoever oversees the conduct of Commissioner.  This court chooses not to be further involved in a version of such a fee-payment scheme.

VIII.

<u>Order</u>

For the reasons given above,

The court ORDERS that the motions of Dunlap for attorney's fees under the EAJA in <u>Vinning</u>, <u>Brown</u>, <u>Keenan-Croom</u>, and <u>Howard</u> be, and are hereby, dismissed.

The court further ORDERS that the EAJA motions in <u>Keenan-Croom</u> and <u>Brown</u> for recovery of costs be, and are hereby, granted, that Commissioner pay to Mary Ann Keenan-Croom $350.00 as her costs and to JoAnn Brown $350.00 as her costs, and that

the requests for recovery of other expenses be, and are hereby,

dismissed.

    SIGNED October 29, 2009.

_____
JOHN McBRYDE
United States District Court